## AUGUST NICHOLSON *et al.* v. STATE.

No. A-2218.    Opinion Filed January 29, 1917.

(162 Pac. 447.)

1.  **TRIAL—Conduct of Trial.** It is the duty of a trial court to refrain from any act or word that would indicate to the jury that a verdict of guilty should be returned in any case on trial before it.

    A trial court is not to be criticized for placing the jury in charge of the bailiff, and retiring the same from the courtroom, and thereafter committing a witness who has testified in the case into the custody of the sheriff to be held for investigation on a perjury charge when the court is convinced that the said witness is guilty of perjury, or has reason to believe that he is guilty of giving perjured testimony in such case.

2.  **EVIDENCE—Conviction.** When all the evidence introduced in the trial of a criminal case fails, as to any defendant, to establish guilt of the crime charged beyond a reasonable doubt, a verdict of guilty is not warranted.

*Appeal from District Court, Blaine County;*
*James R. Tolbert, Judge.*

August Nicholson, John Nicholson, and Sullivan Nicholson were convicted of burglary, and appeal. Reversed as to August Nicholson. Affirmed as to John Nicholson. Abated as to Sullivan Nicholson.

*I. H. Lookabaugh, E. T. Barbour,* and *William Harrison,* for plaintiffs in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.    The plaintiffs in error, August Nicholson, John Nicholson, and Sullivan Nicholson, were

convicted in the district court of Blaine county on a charge of burglary. The punishment was fixed by the court at five years imprisonment each in the state penitentiary. All three of the plaintiffs in error appealed to this court. The death of Sullivan Nicholson since the appeal was taken has been suggested and proper showing made in support thereof. The appeal as to him is therefore abated.

This opinion will review the record only as it affects the rights of the plaintiffs in error August Nicholson and John Nicholson.

It appears that August Nicholson was a negro farmer living in Blaine county, Okla.; that John and Sullivan Nicholson were his sons; that Ben Slaughter lived on the farm of August Nicholson; that he also owned a store about a mile and a half away. During the winter of 1912, when there was a heavy snow upon the ground, some one entered the store of the prosecuting witness, Slaughter, and carried away certain merchandise, consisting of flour, meal, nuts, fruits, wearing apparel, and other items. A wagon and team were used in removing the property. The tracks were traced from and on return to the premises of the plaintiff in error August Nicholson. By reason of the snow on the ground it was easy to trace the wagon and to determine the place from which it started and at which it stopped. A search of the premises of August Nicholson disclosed the major portion of the property claimed to have been lost by Slaughter. It was found in a haystack near the house, in a chicken coop in the yard, and in the barn. A small amount was found in the house. Other portions were found near the house of John Nicholson under a strawstack. It was all found early in the morning following the alleged burglary; witness Slaughter apparently being the first to discover the hiding place.

These are the principal facts disclosed by the record, which were offered in evidence in chief upon behalf of the state at the trial.

The defense offered John and Sullivan Nicholson, who testified that they took a wagon and team belonging to their father without his knowledge or consent, and went to the store of the prosecuting witness, Slaughter, in company with him; and he (Slaughter) opened the back door of the store and handed out the merchandise; that it was placed in the wagon; and that Slaughter went with them on their return trip and helped place the property on the premises of August Nicholson. They testified further that this was done in pursuance of an agreement with Slaughter, the purpose of which was to compromise the said August Nicholson and extort from him money, which money was to be divided between the two Nicholsons and the said Slaughter. Sullivan Nicholson stated that he carried all the items of property in the house which were found there, and that the elder Nicholson knew nothing about it. August Nicholson testified denying all knowledge of the affair.

A number of witnesses were introduced by the defense who testified to facts tending to show that Slaughter had repeatedly requested them to induce August Nicholson to pay him money to abandon the prosecution and leave the country.

Slaughter, in rebuttal, testified on behalf of the state, denying the greater portion of these statements, but admitting that he had discussed the same with several of the witnesses.

The sheriff of the county testified to certain facts in connection with the search and discovery of the property, but knew nothing otherwise.

There is no incriminating testimony of value in the record which indicates that plaintiff in error August Nicholson was connected with this matter directly or indirectly, except the fact that the property was found upon his premises as herein detailed. Standing alone, this is not sufficient to establish the crime of burglary against August Nicholson. The case would have been strong had the charge been receiving stolen property as to him. He appears to have been a negro of some standing and who was prosperous. He owned a few hundred acres of land in Blaine county, some livestock, more or less cash in the bank, and a comfortable home. No one testified to any fact which would indicate that he was at the store of the prosecuting witness, Slaughter, or participated in any manner, directly or indirectly, in the burglary of said store. It is hardly reasonable to believe that any sane man would take from his own premises a team and wagon, drive two or three miles through a heavy snow, burglarize a store, steal a wagonload of general merchandise, drive back home, and place quantities of the merchandise in the yard above the surface, and leave the remainder where it could be easily found. No effort could have covered up the trace of his wagon and team.

No testimony on behalf of the state outside of the finding of the property on his premises indicates that August Nicholson was a party to any conspiracy to burglarize the store of witness Slaughter, or that he was in any manner connected with it. In fact, after reading the entire record, we are impelled to the conclusion that August Nicholson knew nothing about the transaction. He was apparently astounded when he found people on his premises early in the morning searching for stolen property. He said nothing, but stood and gazed on the "mob,"

as it is termed in the testimony, in its frantic efforts to disclose property hidden around his premises. The first discovery was made in a chicken coop sitting out in his yard. The physical facts indicate clearly a bunglesome effort to place these stolen goods in an attitude to compromise this old negro. An unbiased reading of this record, we think, would admit of no other conclusion. It may be that August Nicholson was guilty of participating in this crime, but the state should prove that he was beyond a reasonable doubt.

John Nicholson admits his connection with the affair. It was for the jury to say whether or not all the facts established the crime of burglary against him.

It is argued that the court erred in committing to jail for the purpose of investigation Sam K. Tolden, one of the witnesses who testified at the trial. It appears that at the conclusion of the testimony of the witness Sam K. Tolden the court placed the jury in charge of the bailiff and had it retire from the courtroom, and directed Tolden to sit down until the jury had retired. The sheriff was sent for and the witness committed to jail to appear before a magistrate on a charge of perjury. A careful examination of the record does not indicate any act or word on the part of the court which could have prejudiced or did prejudice the rights of the plaintiffs in error. It is clearly apparent that the jury was excused from this room before the order was made committing the witness. If the court was convinced in his own mind that the witness had committed perjury, it was his duty to do just what he did and in the manner he did it.

The next and final assignment of error is based upon the proposition that the verdict and judgment are contrary to the law and the evidence.

The statement of facts and discussion of the same herein set forth indicates clearly that this court is of the opinion that the verdict is contrary to both the law and the evidence, in so far as August Nicholson is concerned. The law warrants the imprisonment of a citizen only when the facts disclose that he has committed a crime. In this case the facts are wholly insufficient to support a conviction of August Nicholson of burglary.

The judgment of the trial court is reversed, and the cause remanded as to August Nicholson, with directions to grant a new trial. As to John Nicholson the judgment is affirmed.

DOYLE, P. J., and BRETT, J., concur.